**E-FILED**
Monday, 05 November, 2007  02:34:01 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-CR-30056 |
| | ) | |
| DEWONDELL KING, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This cause comes before the Court on Defendant's Motion to

Suppress Statements Obtained in Violation of Miranda (d/e 18) (Motion to

Suppress).  The motion is fully briefed, and pursuant to 28 U.S.C. §

636(b)(1)(B), the District Judge has referred the matter to this judge for an

evidentiary hearing and Report and Recommendation.  See Minute Entry

for September 24, 2007.  After carefully considering all of the submissions

of the parties, hearing evidence on the matter, I recommend that the

Motion to Suppress be DENIED.

## I.  BACKGROUND[1]

Defendant Dewondell King is charged in a one-count Indictment
(d/e 7) with possession with intent to distribute a mixture or substance
containing cocaine and 50 or more grams of a mixture or substance
containing cocaine base ("crack").  In addition to the Motion to Suppress
(d/e 18), Defendant has filed a Sur-Reply to Government's Opposition to
Motion to Suppress (d/e 20) and a Motion for Leave to File Instanter Motion
to Suppress Statements Obtained in Violation of Miranda; Motion for Leave
to File Instanter Motion to Suppress Evidence Obtained During a
Warrantless Search; and, Defendant's Reply to Opposition to Motion to
Suppress Statements (d/e 22).  At the beginning of the evidentiary hearing,
the Court asked Defense Counsel to clarify the grounds upon which the
Defendant wished to proceed.  Defense Counsel responded that the sole
issue that the defense wished to advance was the voluntariness of
statements King made to Agent Giovannelli and Officer Urbas, based on
the allegation that King was not apprised of his Miranda rights.  The Court
thus limits its analysis to this issue.

---

[1] This Report and Recommendation is prepared without the benefit of a transcript.

The matter came before this Court for evidentiary hearing on the instant Motion on October 30, 2007.  The Government called two witnesses, Drug Enforcement Agency (DEA) Special Agent Scott Giovannelli and Task Force Officer Kelly Urbas.  Defendant called as witnesses Springfield Police Department (SPD) Officer Jeremy Mayes and SPD Sargent  Christopher Russell.  After discussing the possible uses of any testimony he might give with his attorneys, King testified on his own behalf.

Based on the testimony heard in open court, King was arrested in the late evening hours of April 16, 2007, by SPD officers who were conducting a drug investigation.  As a part of the investigation, SPD officers were conducting surveillance at the Amtrak station in Springfield.  Officers observed a car driven by Tiffany Clark pick up King and another man, identified as Mr. Darby, at the station.  According to the officers, Clark committed a traffic violation when exiting the station parking lot, and they initiated a traffic stop of her vehicle.  A subsequent search of the vehicle revealed crack and powder cocaine in luggage in the vehicle's trunk.  Clark, Darby, and King were arrested and transported to the Springfield Police Department.  The detainees were separated and placed in interview

rooms.  At approximately midnight, Sgt. Russell contacted Task Force Officer Urbas seeking DEA help with the investigation.  Urbas is employed by the SPD, but for the past year and a half, has been assigned to the DEA Drug Task Force.  Urbas contacted Special Agent Giovannelli.  Giovannelli and Urbas arrived at the Springfield Police Department at approximately 12:30 a.m. on April 17, 2007, and met with Sgt. Russell for a debriefing.

Urbas testified that he and Giovannelli interviewed Mr. Darby, first, beginning at approximately 1:00 a.m. Urbas testified that he verbally advised Darby of his Miranda rights at the outset of the interview.  Both Urbas and Giovannelli agree that they did not offer Darby a written waiver. After they finished interviewing Darby, Urbas and Giovannelli began to interview King.

Urbas testified that he advised King of his Miranda rights prior to any questioning by reading the rights aloud to King off of a Miranda card. Urbas read his Miranda card aloud in open court, covering both the right to remain silent and the right to have an attorney present.  Urbas testified that he asked King whether he understood his rights and that King indicated that he did.  Urbas testified that he then asked King whether King wanted to waive his rights and talk to the officers.  According to Urbas, King

indicated that he did.  Urbas testified that he and Giovannelli then questioned King and King responded to their questions, although he characterized King's statements as "inconsistent."  On rebuttal, Urbas detailed some of the inconsistencies.  For example, Urbas testified that King originally told the officers that he had arrived in Springfield on an earlier train, went to his house, and then returned to the station.  According to Urbas, King subsequently admitted that he took the later train with Darby.

According to Urbas, the officers did not use mental or physical coercion or any deception or trickery to get King to waive his rights.  Urbas further testified that there were no weapons displayed and that the atmosphere was "casual" with the three men sitting around the table.  Urbas noted that Sgt. Russell was in and out of the interview room during the interview with King, and was not present at the time they were discussing King's Miranda rights.  According to Urbas, King did not appear nervous.

According to Giovannelli, he and Urbas began interviewing King at approximately 2:00 a.m.  Giovannelli stated that Russell went in and out of the room during the interview.  Giovannelli testified that Urbas advised King

of his rights by reading the rights to King off of a Miranda card.  According

to Giovannelli, King indicated that he understood his rights and that he was

willing to waive his rights.  Giovannelli testified that King then talked with

the agents.  Giovannelli testified that his report indicates that King was

advised of his Miranda rights.  Giovannelli testified that no mental or

physical coercion was used to get King to waive his rights.  According to

Giovannelli, the agents had a "cordial" attitude when King was advised of

his rights and no weapons were out.  Giovannelli testified that he does not

believe that King was handcuffed or restrained in any way during the

interview.  Giovannelli estimated that the interview with King took

approximately forty minutes.  Giovannelli characterized King as responsive

and a little nervous during the interview.  According to Giovannelli, King

made inconsistent statements during the interview, but eventually admitted

that he took the train to Springfield with Mr. Darby.

Urbas and Giovannelli then interviewed the third detainee, Tiffany

Clark, at approximately 4:00 a.m.  This was not the first time Clark was

interviewed by law enforcement during her detention.  Officer Mayes

testified that he spoke with Clark earlier in the evening.  According to

Mayes, Clark was given a written Miranda waiver and informed of her

Miranda rights.  Mayes testified that Clark indicated verbally and in writing

that she wished to waive her Miranda rights.  Defendant presented

Defendant's Ex. 1, a copy of the SPD Miranda waiver form that was signed

by Tiffany Clark with a time notation of 12:20 a.m.  Mayes testified that this

form comported with his memory of Clark's waiver.

Urbas testified that he was aware that Clark had talked to Officer

Mayes earlier, but did not know that she had executed a written Miranda

waiver.  Urbas testified that he advised Clark of her Miranda rights by

reading them aloud to her off the card prior to questioning her.  Giovannelli

testified that Defendant's Ex. 1 was executed prior to his arrival.  According

to Giovannelli, prior to the interview he and Urbas conducted with Clark,

Urbas informed Clark of her Miranda rights verbally, in the same manner as

he had done with King.

King testified that he traveled from Chicago to Springfield on April 16,

2007, and got into a vehicle that was subsequently stopped by police

officers.  King testified that he was taken by the officers from the traffic stop

to the SPD at approximately 11:00 p.m. or 12:00 a.m.  King stated that he

was in an interrogation room with Officer Mayes from midnight to 2:00 a.m.

and that, during that time, Sgt. Russell went in and out of the room.  King

testified that, at 2:00 a.m. new officers entered the room.  King stated that

Russell was not present at this time.  According to King, the new officers,

identified as Giovannelli and Urbas, said nothing about his Constitutional

rights, and did not tell him he had the right to remain silent or the right to an

attorney.  King testified that he has been arrested before and is familiar

with Miranda.  King stated that he has prior convictions for resisting and

marijuana possession.  King testified that he spoke to the agents and

answered their questions.  King admitted that he told the agents that he

loaned the luggage to a black female named "Jessica" who he knew

through a relative.  King testified that he offered no explanation as to how

the luggage got into Tiffany Clark's car on April 16, 2007.

　　Urbas testified that he did not have Darby, King or Clark execute a

written Miranda waiver.  According to Urbas, under SPD policy, the

decision of whether to seek a written Miranda waiver is left to the individual

officer's discretion.  Urbas explained that he could have given written

warnings to the three individuals, but he chose not to.  Officer Mayes

testified that, under SPD policy, a written Miranda warning/waiver was not

mandatory, but was preferred.  Mayes explained that it was his

understanding that if the written form was available the officer should use it.

Mayes further testified that there were blank forms available at the SPD for any officer doing any investigation.  Sgt. Russell testified that his understanding of SPD policy was that subjects under arrest should be given <u>Miranda</u> warnings prior to being questioned.  Russell agreed that copies of <u>Miranda</u> forms were available at the SPD.  Giovannelli testified that the DEA has a written <u>Miranda</u> waiver form, but its use falls within the agent's discretion.  Giovannelli testified that he did not have a copy of the form with him on April 17, 2007.

## II.  ANALYSIS AND CONCLUSIONS OF LAW

The Fifth Amendment protects an individual from being "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V. In <u>Miranda v. Arizona</u>, the Supreme Court recognized that "in-custody interrogation" places "inherently compelling pressures" on persons interrogated.   <u>Miranda</u>, 384 U.S. 436, 467 (1966).  Thus, to safeguard the Fifth Amendment privilege against self-incrimination, under <u>Miranda</u>, the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  <u>Id</u>. at 444.  A defendant may waive his

Fifth Amendment rights as articulated in Miranda "provided the waiver is
made voluntarily, knowingly, and intelligently." Id.  Therefore, "[w]hen a
Miranda waiver is challenged, two distinct questions are presented:
whether the waiver was voluntary, knowing, and intelligent as a matter of
fact, and whether it was involuntary as a matter of law." Henderson v.
DeTella, 97 F.3d 942, 946 (7th Cir.1996) (citing cases).

The question of whether King voluntarily waived his Miranda rights is
a fact-dependant inquiry.  Factors relevant to the inquiry "include, but are
not limited to, whether the defendant received Miranda warnings; the
defendant's age, intelligence level, education, and mental state; the
conditions under which the defendant was interrogated (i.e., duration,
environment, and access to restroom facilities and food); and whether the
defendant was physically punished." United States v. Murdock, 491 F.3d
694, 699 (7th Cir. 2007).

In the instant case, the Court is presented with a test of credibility
regarding whether King was advised of his Miranda rights, because the
parties have presented competing versions.  King concedes, as he must,
that the failure to obtain a written waiver alone is insufficient to render an
oral waiver involuntary.  Murdock, 491 F.3d at 700.  King, however,

maintains that he was not in any way advised of his <u>Miranda</u> rights prior to

the April 17, 2007 interview.  The only evidence to support this assertion

comes from King's own testimony.  Given the record as a whole, however,

the Court believes that King's testimony lacks credibility.  King concedes

that he made inconsistent statements to law enforcement officers during

the interview.  King also concedes that he was familiar with his <u>Miranda</u>

rights prior to the interview, but nevertheless answered the officers'

questions.  Urbas and Giovannelli testified consistently that Urbas read

King his <u>Miranda</u> rights prior to the interview.  There is no evidence of any

motivation that Urbas and/or Giovannelli would have to fabricate this

testimony, and the officers' testimony is consistent with Giovannelli's

report.  Furthermore, the Court had the opportunity to observe the

witnesses  as they testified and found Urbas and Giovannelli to be credible.

King relies heavily on <u>United States v. Boston</u>, in which the Second

Circuit noted that "the refusal to execute a written waiver may be taken as

an indication that no waiver was intended or freely given."  <u>Boston</u>, 508

F.2d 1171, 1175 (2d Cir. 1974).  The Court notes that the Seventh Circuit

has also recognized that the fact that a subject was presented with a

written <u>Miranda</u> waiver and refused to sign is potentially relevant to the

voluntariness analysis.  See United States v. Crisp, 435 F.2d 354, 358 (7th Cir. 1970).  In the instant case, however, there is no evidence that King was presented with a written Miranda waiver and refused to sign it.  Indeed, King's own testimony is that he was not advised in any way of his Miranda rights.

King's Motion to Suppress highlights the fact that Clark executed a written waiver, while he did not.  As King correctly points out, he and Clark were taken to the same location for interrogation, the Springfield Police Department.  However, it is clear from the evidence that Clark's written Miranda waiver was executed prior to her being questioned by SPD Officer Mayes.  The written form was offered to Clark by Officer Mayes, not by Urbas or Giovannelli (DEA), and was executed prior to Urbas and Giovannelli's (DEA) arrival at the SPD.  It is undisputed that Urbas and Giovannelli conducted the interview with King.  Officer Mayes was not present, and Sgt. Russell was merely in and out of the room.  Giovannelli testified that verbal Miranda warnings comport with DEA policy.  Urbas, while employed by the SPD, has been assigned to the DEA Drug Task Force and was working as a Task Force Officer at the time of the interview.  It is clear from the evidence that Urbas and Giovannelli used the same

verbal Miranda procedures with Clark, Darby, and King.

The Government cites United States v. Jackson, in which the Seventh Circuit expressly held that "[t]he absence of a signed waiver is not conclusive evidence on the issue of whether a defendant waived his rights."  Jackson, 300 F.3d 740, 748 (7th Cir. 2002).  Jackson is factually distinguishable from the instant case, in that, in Jackson, officers had obtained a written Miranda waiver but could not locate the form prior to an evidentiary hearing on a motion to suppress.  Id.  Significantly, however, Jackson reiterates that the analysis of whether a person in custody knowingly and voluntarily waives his Miranda rights depends upon the totality of the circumstances; no one factor controls.  Id.

The Court recognizes that the Government carries a heavy burden at this stage; however, under the totality of the circumstances in the instant case and under the Court's findings relating to credibility, it is clear that King knowingly and voluntarily waived his Miranda rights.  There is no evidence that King's age, intelligence level, or education interfered with his ability to understand his rights.  There is evidence that King may have been a little nervous during the interview, but there is no indication of any overreaching or physical abuse whatsoever in connection with the

interview.  King's familiarity with the criminal justice system is undisputed,

and he testified on cross-examination that he was familiar with his <u>Miranda</u>

rights prior to April 17, 2007.  King admits that he answered the officers'

questions during the interview.  There is no evidence that King was

presented with a written <u>Miranda</u> waiver and refused to sign it.  Under the

facts of the instant case, it is clear that King's statements were the product

of rational intellect and free will and not the result of police coercion.  <u>See</u>

<u>United States v. Brooks</u>, 125 F.3d 484, 492 (7th Cir. 1997).  Thus, the

Government has met its burden of showing that King's statements to Urbas

and Giovannelli were the product of a voluntary, knowing, and intelligent

waiver by King of his <u>Miranda</u> rights.  The Court believes the testimony of

Defendant King simply not to be credible or the truth.  This finding may be

a factor for future considerations under the advisory sentencing guidelines.

### III. CONCLUSION

For all the above reasons, I recommend that Defendant's Motion to

Suppress Statements Obtained in Violation of <u>Miranda</u> (d/e 18) be

DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).   Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); Local Rule 72.2.

ENTER:    November 5, 2007

s/ Byron G. Cudmore

_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE