## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-30056 |
| | ) | |
| DEWONDELL KING, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant's Objection to Report and Recommendation (d/e 32) (Objection).  King filed a Motion to Suppress Statements Obtained in Violation of Miranda (d/e 18) (Motion to Suppress).  The Court referred the Motion to Suppress to United States Magistrate Judge Byron G. Cudmore to conduct an evidentiary hearing and issue a Report and Recommendation.  <u>Minuted Entry entered September 24, 2007</u>.  Judge Cudmore conducted an evidentiary hearing on October 30, 2007, and recommended denying the Motion to Suppress.  <u>Report and Recommendation entered November 5, 2007 (d/e 30)</u>.  King now objects.  This Court must review the Motion to Suppress and the Report and

Recommendation <u>de novo</u>.  28 U.S.C. § 636(b)(1)(B)&(C).  The Court has reviewed the transcript of the hearing, the evidence submitted at the hearing, the Objection, and arguments submitted by the parties.  For the reasons set forth below, the Court overrules the Objection and adopts the Report and Recommendation.

<u>FACTS</u>

The Government has charged Defendant Dewondell King with one count of possession with intent to distribute a mixture or substance containing cocaine and 50 or more grams of a mixture or substance containing cocaine base (crack).  <u>Indictment (d/e 7)</u>.  In his Motion to Suppress, King argued that law enforcement officers never apprised him of his <u>Miranda</u> rights, and therefore the Court should suppress all statements he made to the officers.  <u>Motion</u>, at 6-7.  Before beginning the evidentiary hearing on October 30, 2007, Magistrate Judge Cudmore asked defense counsel to clarify the matters at issue.  Counsel indicated that the Court should determine whether King was advised of his <u>Miranda</u> rights and, in light of that decision, whether any statements he made were voluntary. <u>October 30, 2007, Evidentiary Hearing Transcript (d/e 34) (Hearing Transcript)</u>, at 4.

At the evidentiary hearing, the Government called two witnesses: Drug Enforcement Agency (DEA) Special Agent Scott Giovannelli and DEA Task Force Officer Kelly Urbas.  Urbas explained that technically, he is a Springfield Police Department (SPD) officer on special assignment with the DEA.  King called SPD Officer Jeremy Mayes and SPD Sargent Christopher Russell.  King also testified on his own behalf.  Based on the witnesses' testimony, it is undisputed that SPD officers arrested King late on August 16, 2007.  Id. at 6-7.  SPD officers arrested King at the local train station after pulling over the car in which he was riding and discovering crack cocaine.  Id. at 7.  They also arrested Tiffany Clark, the individual driving the car, and Robert Darby, the third individual in the car.  Id. at 14-15.  Clark had driven to the train station to pick up King and Darby.  Id. at 36.

SPD officers, including Mayes, interviewed Clark at the SPD station that night.  Id. at 37.  The SPD officers provided her a written Miranda warning, which Clark signed.  Id. at 14-15.  Mayes testified that providing a written warning is the SPD's "preferred" method of advising individuals of their rights.  Id. at 39.  Mayes and Urbas agreed, however, that SPD policy leaves the decision to individual officers.  Id. at 27, 38-39.

Around midnight, the SPD contacted the DEA for assistance.  Id. at

3

7.  Giovannelli and Urbas arrived at the SPD station sometime before 12:30 a.m. on August 17, 2007.  Id.  Around 1:00 a.m., Giovannelli and Urbas interviewed Darby.  Id. at 15.  They read Darby his Miranda rights but did not provide him a written warning.  Id. at 15, 26, 31.  DEA policy leaves the issue of whether to advise individuals of their rights orally or to employ a written Miranda rights form up to the individual officers.  Id. at 14.  Later, the DEA agents also interviewed Clark, after the SPD officers' interview was complete.  Id. at 19.  Urbas advised Clark of her Miranda rights orally, but did not provide her a written warning.  Id. at 19-20, 26.

Around 2:00 a.m., Giovannelli and Urbas began interviewing King.  Id. at 8, 32.  The interview took place in a SPD interview room containing a table and two sets of chairs.  Id. at 10.  Russell joined them at different points during the 40-minute interview.  Id. at 8, 11.  Giovannelli and Urbas both testified that before asking King any questions, Urbas read King his Miranda rights from a card.  Id. at 8, 24.  Russell was not present at the start of the interview.  Id. at 26.  He does not recall King being advised of his rights.  Id. at 48.

According to Giovannelli and Urbas, King indicated that he understood his rights and was willing to talk.  Id. at 8-9, 25.  The officers

4

testified that they used no physical or psychological coercion to lead King to waive his rights.  Id. at 10, 25.  They were cordial with him.  Id. at 10. King was not restrained in any way, and the interview lasted only 40 minutes.  Id. at 10-11.  King appeared to be a bit nervous, but he seemed to have no trouble understanding the officers' questions.  Id. at 10, 12.  He did, however, provide inconsistent answers; Giovannelli and Urbas believed he was lying.  Id. at 12, 25.

King's account of the interview differs dramatically.  He testified that neither Giovannelli nor Urbas ever advised him of his Miranda rights.  Id. at 55-56.  In a previous Indiana arrest, King testified, the officers read his rights as soon as he was handcuffed, before they placed him in a squad car. Id. at 56.  Here, no one read him his rights, and no one offered him a written waiver of his rights.  Id. at 57.  King also stated that he never lied to the DEA agents or provided inconsistent answers.  Id. at 59-62.

In his Report and Recommendation, Magistrate Judge Cudmore found that King's testimony lacked credibility.  Report and Recommendation, at 11.  Magistrate Judge Cudmore credited Giovannelli's and Urbas' testimony and held that King was advised of his Miranda rights when Urbas read them to him.  Id.  Magistrate Judge Cudmore also noted that while King never

signed a written waiver, there is no evidence that he was presented one and refused to sign it.  Id. at 12.  Determining that King was advised of his rights, Magistrate Judge Cudmore then analyzed whether King's waiver of those rights was knowing and voluntary.  Id. at 13.  He determined that the Government met its burden in proving that King's statements to Giovannelli and Urbas were the product of a knowing, voluntary, and intelligent waiver.  Id. at 14.

King objects to the Report and Recommendation on the grounds that Magistrate Judge Cudmore misconstrued the applicable law and focused on whether King's statements were voluntary as opposed to whether King ever was advised of his rights.  Objection, at 3.  King asks this Court to allow him leave to preserve this issue for appeal, to decline to enhance his sentence based on his testimony at the evidentiary hearing, and to grant him "such other and further relief" as the Court deems appropriate.  Id. at 11.

<u>ANALYSIS</u>

In his Objection, King never explicitly asks the Court to suppress his statements, but the Court deems his request for "other and further relief" to encompass this relief.  Addressing this request first, the Court holds that Magistrate Judge Cudmore correctly recommended that the Court deny

King's Motion to Suppress.

The Fifth Amendment protects an individual from being "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Under <u>Miranda v. Arizona</u>, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  <u>Miranda</u>, 384 U.S. 436, 444 (1966).  Essentially, statements stemming from custodial interrogation must be suppressed unless, prior to questioning, the defendant was warned that he had a right to remain silent, that any statement he made could be used against him, that he had a right to the presence of an attorney, and that the attorney could be appointed, if he was indigent, or retained.  <u>Id.</u>  Whether law enforcement officers advised a defendant of his <u>Miranda</u> rights before taking custodial statements is a threshold question: if they did not, the analysis is over, and the defendant's statements must be suppressed.  <u>Id.</u>

Here, the Court finds that DEA Task Force Officer Urbas advised King of his <u>Miranda</u> rights.  Urbas and Giovannelli both testified that Urbas read King his rights at the start of their interview.  King disputes their testimony,

but his contention is self-serving.  The Court finds King's testimony -- the only direct evidence that he was not warned of his <u>Miranda</u> rights -- lacks credibility.  King offered Clark's written waiver as circumstantial evidence of his version of events; he argues that the fact that Clark signed a written waiver and he did not, suggests that the officers advised her of her rights, but not him.  This argument is not persuasive, however.  Urbas and Giovannelli testified that they interviewed King, Clark, and Darby, and advised all three of their rights orally.  Different officers provided Clark a written warning.  Urbas and Giovannelli consistently provided only oral warnings.  Moreover, Urbas and Giovannelli did not deviate from DEA policy in providing oral waivers; in fact, even SPD policy allowed for oral waivers.  The Court finds Urbas's and Giovannelli's testimony credible.

Having found that King was advised of his <u>Miranda</u> rights, the Court considers whether he waived those rights.  After being advised of his rights, a defendant may waive them and make statements to law enforcement officers.  <u>Miranda</u>, 384 U.S. at 444.  If he does so, those statements are admissible provided that his waiver (and thus any following statement) was voluntary, knowing, and intelligent.  <u>Id.</u>  The Government bears the burden of proving these requirements.  <u>Id.</u> at 475; <u>United States v. Jackson</u>, 300

F.3d 740, 748 (7th Cir. 2002).

In assessing the nature of a defendant's waiver and statement, courts consider "whether, in light of the totality of the circumstances, the statement was the product of a rational intellect and free will."  United States v. Brooks, 125 F.3d 484, (7th Cir. 1997).  A written waiver is not required.  Jackson, 300 F3d at 748; United States v. Boston, 508 F.2nd 1171, 1175 (2d Cir. 1974).  A defendant's *refusal* to sign a waiver may suggest that subsequent statements were not voluntary, but even where defendants have expressly declined to sign a waiver, courts have found that subsequent statements were voluntary.  See, e.g., United States v. Crisp, 435 F.2d 354, 358-59 (7th Cir. 1970).  "A confession is involuntary only where it was obtained through police coercion or overreaching that overbore the accused's free will."  United States v. Murdock, 491 F.3d 694, (7th Cir. 2007).  Courts consider "such factors as defendant's background and conduct, the duration and conditions of detention, the mental and physical condition of the defendant, the attitude of the police, and whether the police utilized psychological or physical coercion."  Jackson, 300 F.3d at 748.

The Court concludes that King voluntarily, knowingly, and

intelligently waived his <u>Miranda</u> rights.  King never signed a waiver, but he also never refused to sign one.  Neither the agents' testimony nor King's suggests that his statements were obtained by police coercion or overreaching.  King may have been nervous, but there is no evidence that the agents threatened or abused him in any way.  King had been arrested before and testified that he knew his <u>Miranda</u> rights.  Nothing suggests that his age, intelligence level, or education prevented him from understanding his rights or the agents' questions.  The interview took place in a standard SPD room and lasted only 40 minutes.  King was not restrained, and the agents were cordial with him.  King's statements were the product of a rational and free will.  The Government met its burden, and the Court refuses to suppress King's statements.

Regarding King's other two requests, the Court finds no action necessary at this time.  King asks this Court to allow him leave to preserve the issues at bar for appeal, but by asking this Court to rule on his Objection (and allowing the Court to do so), King already has preserved the issue.  Additionally, King asked the Court to decline to enhance his sentence based on his testimony at the evidentiary hearing.  The Court found King's testimony untruthful, but as he has not been convicted, any ruling on his

potential sentence would be improper at this time.

THEREFORE, Defendant's Objection to Report and Recommendation (d/e 32) is OVERRULED.   The Court adopts the Report and Recommendation (d/e 30).  The Motion to Suppress Statements Obtained in Violation of Miranda (d/e 18) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   December 18, 2007

FOR THE COURT:

s/  Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE